UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT OKOTH JOE SIDHE,

Petitioner,

v.

BRUCE SCOTT et al.,

Respondents.

Case No. 2:26-cv-03188-TMC

ORDER GRANTING WRIT OF HABEAS CORPUS

## I. INTRODUCTION AND BACKGROUND

Petitioner Robert Okoth Joe Sidhe is a Kenyan citizen who entered the United States on a B-1 business visa in February 2023. Dkt. 4 ¶ 2–3; Dkt.16 ¶ 4. His visa expired on August 21, 2023. Dkt. 16 ¶ 4. In September 2023, within one year of entering the country, Petitioner applied for asylum. Dkt. 4 ¶ 3. His asylum application remains pending. *Id.* ¶ 8; Dkt. 1 ¶ 36. By March 2024, Petitioner was granted work authorization and, since 2025, he has worked as a Patient Care Technician at the University of Washington Medical Center. Dkt. 4 ¶ 4.

On August 26, 2026, Petitioner was apprehended and detained by U.S. Immigration and Customs Enforcement (“ICE”) officers while he was in his car. Dkt. 4 ¶¶ 7–8; Dkt. 1 ¶ 42; Dkt. 16 ¶ 5. Petitioner was taken to the Northwest ICE Processing Center (“NWIPC”). Dkt. 16 ¶ 6; Dkt. 4 ¶¶ 10–11. That same day, Respondents allege that Petitioner was issued a

Notice to Appear ("NTA") charging him with overstaying his visa under 8 U.S.C. § 1227(a)(1)(B). Dkt. 16 ¶ 6.[1]

Petitioner suffers from several health conditions requiring medication, including hypertension, high cholesterol, and chronic kidney disease. Dkt. 4 ¶ 9. On the day he was apprehended by federal officers, he was only permitted to take one of his three medications. *Id.* ¶¶ 9–12. While in custody at the NWIPC, Petitioner began experiencing chest pain, pain in his upper arm, and blurred vision, among other symptoms. *Id.* ¶ 13. His blood pressure measured 160/111. *Id.* Due to these symptoms, Petitioner was hospitalized at the St. Joseph Medical Center in Tacoma beginning on August 28, where his condition stabilized. *Id.* ¶¶ 13–14; Dkt. 15 ¶¶ 10–11. Petitioner believes his symptoms were consistent with a transient ischemic attack ("TIA"), which often precedes a stroke. Dkt. 4 ¶ 15.

On September 4, 2026, Petitioner filed a petition for writ of habeas corpus, arguing that his detention without a pre-deprivation hearing violated his due process rights. Dkt. 1. On September 8, Petitioner moved for a Temporary Restraining Order ("TRO"), asking the Court to order his immediate release due to ongoing medical challenges and irreparable harm he would face if he experienced a stroke in custody. Dkt. 3. After a hearing on September 11, 2026, this Court granted the TRO, ordering Respondents to release Petitioner and enjoining his re-detention absent certain procedures. Dkt. 19. Petitioner was released that day. Dkt. 20.

On September 18, 2026, Respondents filed a return to the habeas petition. Dkt. 22. On September 23, 2026, Petitioner filed a traverse. Dkt. 24.

---

[1] The record is unclear as to whether Respondents filed an NTA on August 26, 2026. *Compare* Dkt. 16 ¶ 6 (stating that ERO issued an NTA for Petitioner on August 26, 2026), *with* Dkt. 1 ¶ 47 (stating, upon information and belief, that eight days after Petitioner was detained, Respondents had not yet commenced removal proceedings by filing an NTA) *and* Dkt. 23 ¶ 7 (stating that ERO filed an updated NTA on September 10, 2026, which superseded the NTA issued on August 26, 2026).

The habeas petition is now ripe for the Court's review. For the following reasons, the Court GRANTS the petition.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner argues that Respondents violated his due process rights by detaining him over two years after he applied for asylum with U.S. Citizenship and Immigration Services ("USCIS") without first affording him a "hearing before a neutral adjudicator" to "determine whether his detention is justified[] and whether [he] is a flight risk or danger to the community." Dkt. 1 ¶¶ 10, 51. He seeks continued release from custody after the Court's TRO expires, *id.* ¶ 12; Dkt. 24 at 10, and an injunction prohibiting Respondents from re-detaining him absent a "pre-detention hearing before an immigration judge, where the government bears the burden to justify material[ly] changed conditions requ[ing] Petitioner's detention," Dkt. 1 at 18. Respondents counter that Petitioner's detention was lawful because ICE had not previously granted him release and that the injunctive relief he seeks is unwarranted. Dkt. 22 at 1–2, 7–11. The Court agrees with Petitioner that his detention violated due process and that he is entitled to injunctive relief.

### A. Due process requires Petitioner's continued release from custody.

Petitioner analyzes his circumstances through the three-factor test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and discusses numerous cases from this district and

elsewhere in the Ninth Circuit that have granted release to similarly situated petitioners. Dkt. 1 ¶¶ 56–57, 61–62; *see, e.g.*, *Obregon Ante v. Lyons*, No. 2:26-cv-02464-LK, 2026 WL 2516888 (W.D. Wash. Aug. 26, 2026); *Garcia Radillo v. Scott*, No. 2:26-cv-02357-JHC, 2026 WL 2168044 (W.D. Wash. July 28, 2026); *Kirykovich v. Hernandez*, No. 2:26-cv-00695-JNW, 2026 WL 890459 (W.D. Wash. Apr. 1, 2026); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025); *Gongora Poot v. Hernandez*, No. 2:26-cv-02580-TLF, 2026 WL 2516690 (W.D. Wash. Aug. 26, 2026); *Leon Alvarez v. Hernandez*, No. 2:26-cv-02206-TLF, 2026 WL 2592906 (W.D. Wash. Sept. 2, 2026); *D.L.C. v. Wofford*, No. 1:25-cv-01996-DC-JDP-HC, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026); *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026); *Bermudez Navarrete v. Albarran*, No. 26-cv-07444-JST, 2026 WL 2199522 (N.D. Cal. July 30, 2026); *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026); *Carriollo v. Albarran*, No. 3:26-cv-05836-JSC, 2026 WL 1734895 (N.D. Cal. June 16, 2026); *Chavarria v. Chestnut*, No. 25-cv-01755-DAD-AC, 2025 WL 3533606 (E.D. Cal. Dec. 9, 2025) (collecting cases).

Courts throughout the Ninth Circuit have repeatedly applied *Mathews* and principles of procedural due process to limit detention of noncitizens who were permitted to live in the community pending the outcome of immigration proceedings. This Court will not retread that ground in every case, such as this one, arising from the government's repeated, ongoing violation of those principles. *See, e.g.*, *Ortiz v. Hermosillo*, No. 2:26-cv-00384-TL, 2026 WL 607672, at *5 (W.D. Wash. Mar. 4, 2026) ("Respondents have been on notice in this District since at least August 19, 2025" yet "continue[] to re-detain petitioners in this District without due process." (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1324)); *Gagik*, 2026 WL 1837413, at *3 ("[A] noncitizen who has lived at liberty for years while his immigration case proceeds—pursuant to the

Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody."); *id.* at *4 ("The risk of erroneous deprivation from seizing a long-present, work-authorized asylum applicant with no criminal history, without any prior opportunity to be heard, is substantial."). Instead, the Court will focus on whether anything in the record distinguishes this petition from the body of cases on procedural due process.

Federal Respondents emphasize that "ICE had not previously detained [Petitioner] and had not previously released him" and that there is "no evidence" the government previously conducted an "individualized assessment concerning [Petitioner's] danger to the community or flight risk." Dkt. 22 at 7, 9. They argue these circumstances distinguish Petitioner from noncitizens who were re-detained following a prior individualized decision to release them. *Id.* at 7–10. Respondents contend that § 1226(a) authorized Petitioner's detention and that the post-deprivation procedures available under that provision provide sufficient process. *Id.*

But, as Petitioner points out, Respondents' argument assumes that prior release from detention is necessary to establish the relevant liberty interest. Dkt. 24 at 3. Here, Petitioner points instead to the government's course of conduct—including lawfully admitting Petitioner, permitting him to remain at liberty while his asylum application was pending, and granting him employment authorization—as establishing a protected interest in his continued liberty. *Id.* Nor is there any evidence in the record to suggest that Petitioner's circumstances changed, or that the decision to detain him was based on a determination that he poses a flight risk or danger to the community. *Id.* at 7, 9–10, 9 n.4; Dkt. 1 ¶ 5. To the contrary, at the TRO hearing, counsel for Respondents suggested that Petitioner was detained solely because he overstayed his visa—a fact which, standing alone, would not justify discretionary detention under § 1226(a). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (discussing how, even for an initial custody

determination, a noncitizen should be released if he is "likely to appear" for future proceedings and does not "pose a danger to property or persons").

The Court concludes that the circumstances of Petitioner's arrest are largely indistinguishable from the many due process cases decided in this District and elsewhere in the Ninth Circuit that have ordered release. *See, e.g.*, *Troykalo v. Armant*, No. EDCV 26-04875-KK-PDx, 2026 WL 2602910 (C.D. Cal. Sept. 2, 2026) (petitioner overstayed B-2 visa, applied for asylum, submitted biometrics data, and was not placed in removal proceedings); *Tello Vazquez v. Mullin*, No. C26-2039-KKE, 2026 WL 1911507 (W.D. Wash. July 2, 2026) (petitioner overstayed J-1 visa); *Huang v. Blanche*, No. 2:26-cv-02157-BAT, 2026 WL 2271901 (W.D. Wash. July 15, 2026) (petitioner overstayed tourist visa, applied for asylum, and was not detained after case was transferred to the Executive Office for Immigration Review ("EOIR") for removal proceedings); *Carriollo*, 2026 WL 1734895 (petitioner entered on B-2 visa and applied for asylum); *Kharitonova*, 2026 WL 531441 (petitioner entered on nonimmigrant visa, applied for asylum, and was not detained after case transferred to EOIR for removal proceedings). Respondents did not cite any cases reaching a different result on similar facts. As the court in *Gagik* explained, "[t]he point is not that any single agency action adjudicated flight risk," but that the government's conduct, "taken as a whole, reflected a sustained decision to permit Petitioner's liberty." *Gagik*, 2026 WL 1837413, at *3.

The government's decision to detain Petitioner without notice or a hearing violated his right to procedural due process. The Court therefore GRANTS the habeas petition.

**B. Petitioner is entitled to injunctive relief from re-detention.**

A petitioner seeking permanent injunctive relief must demonstrate:

> (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a

> remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006).

Petitioner suffers from hypertension, high cholesterol, and chronic kidney disease and depends on three prescription medications to manage his symptoms. Dkt. 4 ¶ 9. During his detention, he experienced a serious medical episode requiring hospitalization and continues to report lingering symptoms and concerns about his access to appropriate medical care in detention. *Id.* ¶¶ 13–17. Petitioner is also the primary caregiver for his U.S.-citizen partner, who has cerebellar ataxia and is dependent on a wheelchair. *Id.* ¶¶ 5, 18.

Petitioner has undoubtedly suffered irreparable injuries—including his unlawful detention, the violation of his due process rights, and loss of regular contact with and the ability to care for his partner—where monetary damages are unavailable or inadequate to compensate him. *Saadhom v. Bondi*, 829 F. Supp. 3d 907, 919 (W.D. Wash. 2026) (*citing Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). The balance of hardships leans in favor of Petitioner, "as the injunction requires only that Respondents comply with the Constitution before re-detaining him." *Saley v. Scott*, No. 2:26-cv-00797-JNW, 2026 WL 914810, at *5 (W.D. Wash. Apr. 3, 2026). Lastly, "the public interest is served by an order prohibiting Respondents from violating the Due Process Clause." *Id.*

Petitioner has satisfied the requirements for a permanent injunction. As other orders in this District have observed, Respondents have demonstrated an intent to continue their practices no matter how many federal district courts conclude that those practices violate the law. *See, e.g.*, *Lima Gamez v. Hernandez*, No. 2:26-cv-01104-BAT, 2026 WL 1382362, at *7 (W.D. Wash. May 18, 2026). Petitioner thus faces an ongoing likelihood of irreparable harm. Absent circumstances urgently requiring arrest, the Court prohibits Respondents from re-detaining

Petitioner as described below. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) ("[T]here may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate."); *Caglar v. Wamsley*, No. 2:26-cv-00787-TMC, 2026 WL 1123515, at *5 (W.D. Wash. Apr. 24, 2026) (discussing burden of proof in re-detention hearings).

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS:

1. The petition for writ of habeas corpus (Dkt. 1) is GRANTED.
2. Absent circumstances urgently requiring arrest or an administratively final order of removal, Respondents are ENJOINED from re-detaining Petitioner Robert Okoth Joe Sidhe during the pendency of his removal proceedings absent written notice and a hearing before a neutral decisionmaker, at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk based on changed circumstances.

Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and the parties are encouraged to confer before filing a petition.

Dated this 30th day of September, 2026.

Tiffany M. Cartwright
United States District Judge